## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **KIERRA JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Case No.: _____** |
| **v.** | ) | |
| | ) | |
| **SUNBEAM PRODUCTS, INC. d/b/a** | ) | **JURY TRIAL DEMANDED** |
| **JARDEN CONSUMER SOLUTIONS;** | ) | |
| **And NEWEL BRANDS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## COMPLAINT
_____

COMES NOW, KIERRA JONES, Plaintiff in the above-styled action, by and
through undersigned counsel, and sets forth her claims against Defendants
SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS and
NEWELL BRANDS, INC. in this Complaint for Damages and Jury Trial Demand
as follows:

### I.    NATURE OF THE CASE

1.    This is a strict products liability, negligence, breach of warranty, and failure
to warn action to remedy the damages caused by latent safety defects present
in the Crock-Pot "Express Crock Multi-Cooker" Model "SCCPPC600-V2-
DS" (hereinafter "PRESSURE COOKER"):

1



2.     The defective condition of the PRESSURE COOKER, known to Defendants but unknown to Plaintiff, caused permanent and debilitating injuries to KIERRA JONES.

## II.     PARTIES

3.     Plaintiff KIERRA JONES (hereinafter referred to as "PLAINTIFF") is an adult citizen of the State of Tennessee and a resident of Knox County, Tennessee. By filing this action, Plaintiff avails herself of the jurisdiction and venue of this Court.

4.     Defendant SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS (hereinafter referred to as "SUNBEAM" and/or "Defendant SUNBEAM") is a Delaware corporation with its registered address, headquarters, and principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. SUNBEAM may be served with legal process through its agent for service of process: CORPORATION

2

SERVICE COMPANY, 2908 Poston Avenue, Nashville, Tennessee 37203. At all times relevant to the incident giving rise to Plaintiff's Complaint, Defendant SUNBEAM designed, manufactured, marketed, distributed, and/or sold its products to consumers in the State of Tennessee.

5.   Defendant NEWELL BRANDS, INC. (hereinafter referred to as "NEWELL" and/or "Defendant NEWWELL") is a Delaware corporation with its registered address, headquarters, and principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. NEWELL BRANDS may be served with legal process through its agent for service of process: CORPORATION SERVICE COMPANY, 2908 Poston Avenue, Nashville, Tennessee 37203. Defendant NEWELL is a successor company of Newell Rubbermaid, and it is therefore liable for the acts of its predecessor as a result of NEWELL BRANDS' express assumption of the obligations of Newell Rubbermaid. At all times relevant to the incident giving rise to Plaintiff's Complaint, Defendant NEWELL designed, manufactured, marketed, distributed, and/or sold its products to consumers in the State of Tennessee.

### III.   JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because this action is between a citizen of the State of

Tennessee, and two (2) entities domiciled in the State of Georgia.

7.  This Court has further subject matter jurisdiction over this action, as the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

8.  This Court has personal jurisdiction over Defendant SUNBEAM. Under Tennessee's long arm-statute, an appropriate basis exists for service of process on SUNBEAM because SUNBEAM has purposefully availed itself of the privilege of conducting business in the State of Tennessee. SUNBEAM conducts business in Tennessee, in that it causes the consumer products it designs, tests, manufacturers, markets, distributes, and/or sells to be marketed, distributed, sold, and used within the State of Tennessee. Through its actions, SUNBEAM has consented to the jurisdiction of this Court and should reasonably anticipate being hailed into a Tennessee court.

9.  This Court has personal jurisdiction over Defendant NEWELL. Under Tennessee's long arm-statute, an appropriate basis exists for service of process on NEWELL because NEWELL has purposefully availed itself of the privilege of conducting business in the State of Tennessee. NEWELL conducts business in Tennessee, in that it causes the consumer products it designs, tests, manufacturers, markets, distributes, and/or sells to be marketed, distributed, sold, and used within the State of Tennessee. Through its actions,

NEWELL has consented to the jurisdiction of this Court and should reasonably anticipate being hailed into a Tennessee court.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this Judicial District.

## IV. FACTUAL ALLEGATIONS

11. On or about December 8, 2024, KIERRA JONES was using the PRESSURE COOKER to prepare pork ribs.

12. When the PRESSURE COOKER indicated the cooking cycle was complete, KIERRA JONES attempted to open the lid.

13. When KIERRA JONES attempted to open the lid, the PRESSURE COOKER exploded, despite the failsafe devices supposedly integrated as part of the design of the PRESSURE COOKER.

14. The PRESSURE COOKER'S lid blew off with such extreme force that super-heated liquid and contents were spewed onto KIERRA JONES' upper extremities.

15. As a result of the design and manufacturing defects present in the PRESSURE COOKER, KIERRA JONES has suffered permanent injuries to both arms and hands.

5

16.     The PRESSURE COOKER'S Owner's Guide, under the section "GETTING

        TO KNOW YOUR EXPRESS CROCK," represents the following:

> 1.   Pressure will not build if the Lid is not shut correctly and has not sealed.

> 6.   Once the pressure increases, the Lid cannot be opened. Safety sensors ensure the pressure remains within the set range.

> 8.   At the end of cooking, the Lid cannot be unlocked until all the pressure is released. This can be done using the Natural Pressure Release Method or Quick Pressure Release Method, explained on page 18.

17.     These statements are unequivocally false. The design of the PRESSURE

        COOKER allowed KIERRA JONES to remove the lid with built-up pressure

        inside the unit.

18.     As a result, PRESSURE COOKERS are manufactured, assembled, sold, and

        distributed by Defendants with dangerous defects, while the Owner's Guide

        falsely represents the opposite.

19.     Upon information and belief, Defendant SUNBEAM designed, manufactured,

        purchased, tested, marketed, promoted, advertised, sold, distributed, and

        approved of the PRESSURE COOKER.

20.     Upon information and belief, Defendant SUNBEAM was previously aware of

        other incidents of exploding PRESSURE COOKERS due to the identical

        design and manufacturing defects in the PRESSURE COOKER that maimed

6

KIERRA JONES, yet SUNBEAM failed to recall and remedy the defects in the PRESSURE COOKER or adequately warn Plaintiff of the latent danger caused by those known defects.

21. Upon information and belief, Defendant NEWELL BRANDS designed, manufactured, purchased, tested, marketed, promoted, advertised, sold, distributed, and approved of the PRESSURE COOKER. Defendant NEWELL BRANDS also directed the activities of SUNBEAM regarding the PRESSURE COOKER, including NEWELL BRANDS' review and approval of the design, manufacture, and disclosure of the PRESSURE COOKER'S safety features and safety warnings. NEWELL BRANDS also undertook a review of other known incidents of injuries caused by exploding PRESSURE COOKERS.

22. Upon information and belief, Defendant NEWELL BRANDS was previously aware of other incidents of exploding PRESSURE COOKERS due to the identical design and manufacturing defects in the PRESSURE COOKER that maimed both Plaintiffs, yet it failed to recall and remedy the defects in the PRESSURE COOKER or adequately warn consumers, including Plaintiff, of the latent danger caused by those known defects. Throughout all relevant time periods, NEWELL BRANDS and its predecessor(s) maintained ultimate control and responsibility over the PRESSURE COOKER'S compliance with

7

industry and governmental safety standards. NEWELL BRANDS was the ultimate decision maker regarding the failure to issue a recall of the PRESSURE COOKER despite NEWELL BRANDS' knowledge of its unsafe condition, and it directed the activities of the other Defendants regarding these issues.

23. Ultimately, the separate acts of all Defendants proximately caused Plaintiff's injuries and damages as alleged herein.

24. Plaintiff KIERRA JONES brings this Complaint in good faith based on the facts of the subject incident and examination of the remains of the PRESSURE COOKER. Plaintiff pleads the following counts below, to the extent necessary and as allowed by applicable codes, statutes, and established case law.

## V.    CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY
### (All Defendants)

25. Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty-four (24) above as if fully set out herein.

26. The PRESSURE COOKER was designed, manufactured, marketed, imported, distributed, and sold by Defendants in a defective condition that rendered the product unreasonably and foreseeably dangerous in at least

8

the following ways:

27.   (a)   The PRESSURE COOKER was designed *and* manufactured in such a manner that it was able to build heat and pressure without its lid being sufficiently secured or locked, causing it to fail and explode during normal use and operation. These design and manufacturing defects caused Plaintiff to suffer traumatic and permanent injuries from the ordinary use of the PRESSURE COOKER.

28.   (b)   The PRESSURE COOKER did not contain adequate warnings to consumers, including Plaintiff, of the unreasonable dangers and risks inherent in its design and manufacture. In fact, Defendants explicitly, affirmatively, and falsely represented that the PRESSURE COOKER'S defective condition *did not* exist. At a minimum, a PRESSURE COOKER that can explode and permanently injure consumers under normal and intended operation should be affixed with a permanent label on the product informing consumers that its ordinary use can lead to permanent injury and death. As a result of this warning defect, Plaintiff was caused to suffer traumatic injuries from the ordinary use of the PRESSURE COOKER.

29.   The PRESSURE COOKER failed to perform as safely as an ordinary consumer would expect when used as intended and in a reasonably foreseeable manner, as it was here. Further, the risk of harm presented by the

9

PRESSURE COOKER, on balance, outweighs the benefits of the design of the PRESSURE COOKER. Due to this dangerous condition, no reasonable product manufacturer would put this product on the market.

30. Defendants' conduct, including the distribution of dangerous PRESSURE COOKERS premised on the false representation that they are equipped with safety features they do not have, demonstrates a conscious disregard or indifference to the life, safety, and rights of consumers, and constitutes gross negligence.

31. Defendants' PRESSURE COOKER was in the same or substantially similar condition at the time of the explosion as it was when it left the possession of Defendants.

32. Plaintiff did not misuse or materially alter her PRESSURE COOKER.

33. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the PRESSURE COOKER despite having extensive knowledge that the aforementioned injuries could and did occur.

34. Defendants failed to adequately test the PRESSURE COOKER.

35. Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented Plaintiff's injuries and damages.

36. As a direct and proximate result of the design, manufacturing and/or warning

defects in the PRESSURE COOKER for which Defendants are liable, Plaintiff suffered permanent physical, mental, and emotional injuries and damages, and she will continue to suffer these damages into the future.

37. Defendants are liable for all injuries and damages to Plaintiff related to this incident.

## COUNT II
## NEGLIGENCE
### (All Defendants)

38. Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty-four (24) above as if fully set out herein.

39. Defendants have a duty of reasonable care to design, manufacture, market, and sell a non-defective PRESSURE COOKER that is reasonably safe for their intended uses by consumers, such as Plaintiff.

40. Defendants breached its various duties of care in the following ways with respect to the explosion:

41. Tortiously designing, manufacturing, marketing, promoting, advertising, and/or selling the PRESSURE COOKER such that a defect existed that allowed the PRESSURE COOKER to build dangerous pressure with an unsecure lid, causing Plaintiff to suffer catastrophic injury;

42. Tortiously failing to warn at all, or to adequately warn, consumers of the PRESSURE COOKER, including Plaintiff, of the unreasonable dangers and risks inherent in its design and manufacture; and

43. Tortiously failing to timely and effectively remedy, recall, or otherwise warn post-sale of the defective and dangerous condition known to exist in the PRESSURE COOKER so as to avoid suffering and catastrophic injury, such as occurred here.

44. Defendants failed to exercise ordinary care in the manufacture, sale, warning, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of its PRESSURE COOKER, thus creating a high risk of unreasonable harm to the Plaintiff and consumers alike. Defendants knew, or should have known, of these safety risks.

45. As a result of these negligent acts, the PRESSURE COOKER was sold and manufactured in a defective condition that was known, or should have been known, to Defendants.

46. Defendants' conduct, including the distribution of dangerous PRESSURE COOKERS premised on the false representation that they are equipped with safety features they do not have, demonstrates a conscious disregard or indifference to the life, safety, and rights of consumers, and constitutes gross negligence.

47.  As a direct and proximate result of the various breaches of Defendants' duties, Plaintiff suffered grievous and permanent physical, mental, and emotional injuries and damages, and she will continue to suffer these damages into the future.

48.  Defendants are liable for all injuries and damages to Plaintiff related to this incident.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (All Defendants)

49.  Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty-four (24) above as if fully set out herein.

50.  Defendants, through its packaging, user manuals, safety instructions, labeling, website materials, advertising, and promotional statements, made express warranties and affirmations of fact regarding the safety of the PRESSURE COOKER.

51.  These express warranties included, but were not limited to, representations that:

    a.  the PRESSURE COOKER was safe for home use;

    b.  the lid would not open under pressure;

    c.  built-in safety mechanisms would prevent pressure buildup beyond safe limits;

d. the PRESSURE COOKER met or exceeded industry safety standards; and

e. the PRESSURE COOKER was designed to safely release internal pressure before the lid could disengage.

52. Plaintiff and Plaintiff's household relied on Defendants' express warranties in purchasing and using the PRESSURE COOKER.

53. The PRESSURE COOKER did not conform to these warranties because it was defective, unreasonably dangerous, and capable of exploding or allowing premature lid removal despite the presence of internal pressure. As a direct and/or proximate result of Defendants' breach of express warranties, Plaintiff suffered grievous and permanent physical, mental, and emotional injuries and damages, and will continue to suffer these damages into the future.

**COUNT IV**
**<u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>**
**(All Defendants)**

54. Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty- four (24) above as if fully set out herein.

55. Defendants were at all relevant times a merchant with respect to consumer pressure cookers and sold the PRESSURE COOKER in the ordinary course of its business.

56. The PRESSURE COOKER carried an implied warranty of merchantability, including warranties that the PRESSURE COOKER was fit for its ordinary purpose, of fair quality, properly labeled, and safe for consumer use.

57. The ordinary purpose of a PRESSURE COOKER is to safely cook food under controlled pressure without releasing scalding steam, superheated liquids, or explosively ejecting contents.

58. The PRESSURE COOKER was not merchantable when sold because it contained defects in its lid-locking system, pressure-release mechanisms, safety-valve design, and/or construction that rendered it unreasonably dangerous and prone to pressure retention and explosion during normal use.

59. Plaintiff used the PRESSURE COOKER in a normal, intended, and foreseeable manner, consistent with the PRESSURE COOKER'S design, labeling, and instructions.

60. The Product's defects caused the pressure cooker to violently explode and discharge scalding contents onto Plaintiff, resulting in severe burn injuries. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs suffered grievous and permanent physical, mental, and emotional injuries and damages, and will continue to suffer these damages into the future.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR
## A PARTICULAR PURPOSE
### (All Defendants)

61. Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty- four (24) above as if fully set out herein.

62. Defendants knew or had reason to know that consumers, including Plaintiff, would rely on Defendants' skill, expertise, and representations in selecting a PRESSURE COOKER that was safe for routine household cooking involving high internal pressures.

63. Defendants knew or had reason to know that Plaintiff would rely upon its assurances that the PRESSURE COOKER'S safety mechanisms would prevent explosive failures, unintended lid separation, or the release of superheated contents during or immediately after cooking.

64. Plaintiff relied on Defendants' skill, judgment, and representations in selecting and using the PRESSURE COOKER.

65. The PRESSURE COOKER was not fit for this particular purpose because its safety mechanisms failed to prevent a sudden release of pressure, causing the PRESSURE COOKER to explode and severely burn Plaintiff.

66. As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs suffered grievous and permanent

16

physical, mental, and emotional injuries and damages, and will continue to suffer these damages into the future.

## COUNT VI
## FAILURE TO WARN
### (All Defendants)

67.  Plaintiff adopts and incorporates by reference each and every allegation contained in paragraphs eleven (11) through twenty- four (24) above as if fully set out herein.

68.  At all relevant times, Defendants were engaged in the design, manufacture, testing, labeling, marketing, distribution, and sale of the PRESSURE COOKER that is the subject of this action.

69.  The PRESSURE COOKER was defective and unreasonably dangerous when it left Defendants' control because it was sold without adequate warnings or instructions concerning hazards that were known or reasonably knowable to Defendants at the time of manufacture and sale.

70.  Defendants knew or, in the exercise of reasonable care, should have known that the PRESSURE COOKER presented significant risks of injury when used in a reasonably foreseeable manner.

71.  Despite this knowledge, Defendants failed to provide clear, prominent, and adequate warnings regarding these risks, including but not limited to warnings

concerning the nature of the hazard, the likelihood of injury, and the proper steps necessary to avoid or mitigate the danger.

72. Defendants further failed to provide adequate instructions, safety guidance, or user information that would have informed Plaintiff and other ordinary consumers of the PRESSURE COOKER'S risks and safe operation.

73. The absence of adequate warnings and instructions rendered the PRESSURE COOKER unreasonably dangerous to an ordinary consumer and created a foreseeable and preventable risk of serious injury.

74. Plaintiff used the PRESSURE COOKER in a reasonably foreseeable, intended, and proper manner, and was not aware, nor could an ordinary consumer have been aware, of the PRESSURE COOKER'S concealed dangers.

75. Had Defendants provided adequate warnings and instructions, Plaintiff would have taken additional precautions, avoided use, discontinued use, or otherwise prevented the incident that caused the injuries at issue. As a direct and proximate result of the foregoing, Plaintiff suffered grievous and permanent physical, mental, and emotional injuries and damages, and will continue to suffer these damages into the future.

## VI. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following relief:

1. That Defendants Answer this Complaint as provided by law;

2. That Plaintiff KIERRA JONES have a trial by jury;

3. That Plaintiff recover all elements of compensatory damages against Defendants;

4. That Plaintiff recover all damages to which she is entitled to recover under Tennessee law, including but not limited to:

   a. Damages for mental and physical suffering, loss of time, and necessary expenses resulting to Plaintiff as a result of the injuries she suffered;

   b. Punitive damages sufficient to punish, penalize, and deter the tortious conduct outlined in this Complaint;

   c. Reasonable and necessary medical expenses in the past for Plaintiff;

   d. Reasonable and necessary medical expenses which will be incurred in the future by Plaintiff;

   e. Physical pain suffered in the past by Plaintiff;

   f. Physical pain which will be suffered in the future by Plaintiff;

   g. Mental anguish suffered in the past by Plaintiff;

   h. Mental anguish which will be suffered in the future by Plaintiff;

   i. Physical impairment in the past of Plaintiff;

   j. Physical impairment which will be suffered in the future by Plaintiff;

   k. Disfigurement sustained in the past by Plaintiff;

   l. Disfigurement which will be sustained in the future by Plaintiff; and

19

m. Permanent injuries suffered by Plaintiff.

n. That Plaintiff recovers damages caused by Defendants' breach of warranties;

o. That Plaintiff recover all prejudgment interest;

p. That Plaintiff recovers all costs, including discretionary costs; and

q. That the Court award all other and future relief as it deems proper.

Pursuant to T.C.A. § 29–28–107, Plaintiff demands a judgment in the amount of $2,000,000.00 or an amount to be determined by the enlightened conscience of the jury.

## JURY DEMAND

Plaintiff demands a trial by struck jury on all issues so triable.

**Respectfully submitted this 5th day of December 2025.**

*/s/ J. Curt Tanner*
J. Curt Tanner, Esq. (BPR No.: 037976)
TURNBULL, MOAK & PENDERGRASS, P.C.
2501 20th Place South, Suite 425
Homewood, Alabama 35223
Telephone: (205) 831-5040
Facsimile: (205) 848-6300
E-Mail: ctanner@turnbullfirm.com
*Counsel for Plaintiff*

**<u>TO CLERK OF THE COURT: PLAINTIFF WILL PERSONALLY SERVE
THE DEFENDANTS AS FOLLOWS:</u>**

**SUNBEAM PRODUCTS, INC.**
c/o Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203

**NEWELL BRANDS, INC.**
c/o Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203